May it please the court, my name is Nancy Johnson, I'm here representing Wayne Weber. Before I go too much further, I'd like to point out I wear hearing aids, so if I asked you to repeat something, it's probably because I didn't hear it. That being said, this case arises out of a long-standing neighborhood dispute. Mr. Weber had numerous complaints to the Golden Police. Many neighbors across the street did the same. At the time of the incident in question, his neighbor across the street, Skylar Espinosa-Swanson, had pled out in one case of harassment against Mr. Weber and was charged with a second case menacing against Mr. Weber. He had relatives living to either side of him as well. At this point, Sergeant Matt Porter decided that Golden Police didn't want to respond to a lot of nit-noy little complaints and decided they were going to act on virtually anything that was brought to their attention. Now, Sergeant Porter investigated a complaint by Mr. Reisner and Ms. Wilson, who were the sister and brother-in-law of Mr. Espinosa-Swanson, that Mr. Weber had complained to Mr. Reisner's employer about the big truck with a boom on it that had been parked in front of Mr. Reisner's house that he had used to work on gutters, etc. Reisner and Wilson complained that they made false complaints, but Mr. Weber had pictures of what had happened. Rather than letting you keep going through the facts, because I think we all are familiar with them and you're going to use all your time, I'm going to focus you. The first issue that I see here is whether the warrantless arrest was unconstitutional. So I'm going to ask you to focus on that, and we have an assertion of qualified immunity by Sergeant Porter, which means that there are two prongs that you bear the burden on, and the second of those prongs is that it's clearly established. And where I have trouble with the briefing in this matter, I'll pull it closer, where I have trouble with the briefing in this matter is that you cite Colorado law for the second prong of clearly established, but that isn't clearly established. The case law is very clear. For it to be clearly established, there has to be a U.S. Supreme Court case or 10th Circuit authority that made it clear to every reasonable officer that this warrantless arrest was a violation of your client's Fourth Amendment rights. And I am struggling with why you didn't waive any argument or forfeit it, for that matter, because you didn't argue a single 10th Circuit or 10th or Supreme Court case. Your Honor, Mr. Weber exercised his Fourth Amendment rights when he went down to McBride Lighting and reported, and the Virginia B. Black, the statements were not threats. They were not false. They were not unlawful. Mr. Sergeant Porter decided that these reports violated the harassment statute in Colorado, which is clear and was at the time. Would it be your, I'm sorry to interrupt, but would it be your position that this state law that you're talking about helps to define what probable cause would be for an arrest? Is that why you cited the Colorado cases? Yes. Mr. Weber was arrested for retaliation against a witness, which requires that there be an act, a threat or act of harassment, as defined in 18-9111, or act of harm or injury upon any person or property. It's a specific, a specific intent crime. He had to have intended to do it as a retaliation or retribution against a witness or victim. Anna, you're in, go ahead. Sorry, but Mr. Weber indicated to Sergeant Porter that he was doing it to, quote, get back at these people. I mean, that sounds like retaliation. Yes, it does to a certain extent. He also changed his story later, but the question was, was the person he was reporting on, Mr. Reisner, actually a witness? Sergeant Porter decided he was a witness strictly by asking, are you a witness? Made no attempt to determine that he was a witness pursuant to 18-8702 Colorado law, which means there was no attempt to determine whether he had made a declaration of oath, oath reported a crime, had been served with a subpoena, whether he'd been endorsed as a witness. It also can be a family member of a witness, can it, under the Colorado Witness Retaliation Statute? Yes, except that the witness that was, there's no other witness involved that he was a family member of. It was only later in the reply brief that the issue that Schuyler Espinosa Swanson might be a witness as a defendant in a case. If you're, to be a witness as a defendant, you have to take the stand or be endorsed as a witness. That was not the case, and there was no... Why couldn't he be a potential witness? I mean, the proceeding was still ongoing, right? No, this would have been in, well, it would have been in the case that played out already or in the case that was ongoing. And in the case that was ongoing, why couldn't he be a witness? If you were a potential witness were included in this, then you could never report a crime against someone because they are a potential witness and you therefore would be retaliating against a witness. Well, you don't retaliate, right? I mean, you could report a crime. You just don't retaliate against the person that is the potential defendant in the matter. That's, that, the Colorado Supreme Court has read that in People v. Hickman to say that if it were true that defendants were a witness automatically, then he would, any report would be a retaliation against that person. So, with a defendant... There was an act here. Okay, let's, there are two, at least within the universe of conceivable witnesses. There is Mr. Reisner, who was, the report was directed towards. Now, in that particular instance, didn't Mr. Reisner's wife and someone else give a written statement to the Colorado police about their ongoing controversy with the brother? No, there was no written statement given to the police. I think there is a document that appears in 442 of the record. It was Exhibit F and it is a letter, it is a document from the two people. Let's see here. It is, it's about a neighborhood dispute. You have Laura Wilson and Amber who filed a document that they indicated that they wanted to talk about what was an ongoing dispute between this Reisner is the, is Mr. Reisner's wife, his wife, their neighbors, right? And she filed that report. I don't believe there was a written document, but I cannot state that unequivocally. I think the issue was, was it under oath? Well, why would it have to be under oath? What we're talking about, I mean, does Colorado law require there to be some basis that somebody might be a witness that it be under oath? Let's just, let's go with this assumption and tell me whether the law is to the contrary. Let's assume that this document was submitted to the police and as a result of this neighborhood dispute, the idea potentially would be that Mr. Reisner could be a witness to the dispute between Mr. Swanson Espinoza and Mr. Weber. Why would that not be something that could be viable under the law? It, I will concede that it is possible that he could be a witness to the, to the neighborhood dispute. However, that was not what, he did not make, as far as I remember, he did not make the declaration under oath. He would not have been served with a subpoena. Sergeant Porter made no attempt to determine whether the prosecutor or defense was planning to call him as a witness. There would, he just thought he might be, and the term might is in, in the police report that he might be a witness. Well, well, might be in the report. I mean, there's no, there, is there a requirement under Colorado law that there needs to be a subpoena or a declaration for, to trigger the notion that you'd be a witness? That is one of the possibilities. Of course it's a possibility, but is it the only way that you can do it? No.  Well, let's, on the notion, let me just be clear on your understanding of Colorado law. Let's assume we're talking about Swanson Espinosa. Is there any prohibition under Colorado law to a defendant being a witness for purposes of this retaliation against a witness statute? There is no prohibition, but they must have some indication that he is indeed a witness. Okay. Well, we've got, we've got Mr. Weaver taking an act against Mr. Reisner, who is a friend of Mr. Swanson Espinosa. And, and let's assume in this scenario that Swanson Espinosa is the witness. So he takes an act of retaliation against a friend of Mr. Swanson Espinosa. Then when the police come, he says that it's relative to this dispute I was trying to get back at. Okay, Swanson Espinosa. Well, why could he not, in trying to get back at Swanson Espinosa, take an act against Mr. Reisner? Okay, let me correct one thing. Mr. Reisner was Mr. Swanson Espinosa's brother-in-law. Okay, even, even closer connection. All right. So he's his brother-in-law. So it has to be a family member. And he was indeed a family member of Mr. Swanson Espinosa. However, the, the retaliation against a witness requires that it's a specific intent that it had to be as, right, retaliation or retribution because he was a witness. Just wanting to get back at the family is insufficient. It has to be specifically because he was a witness. That's right. But if we, if what we're talking about and, and focusing as Judge McHugh was on what the legal standard here is, for clearly established law, we have case law that says essentially that under that second prong, what we're talking about is whether there was arguable probable cause. In other words, even if as a matter of law, there was not probable cause that the sergeant operated under, he could argue under arguable probable cause. So was there a reasonable basis for him to believe that he had probable, that for a reasonable officer to believe he had probable cause? Was there a basis for a reasonable officer to believe he had probable cause, whether he actually did or not? So in this situation, if given the fact that he's his brother-in-law and the fact that he's caught up in this mix, I'm talking about Reasoner now, why, why couldn't it not be the case that there was an arguable probable cause to believe that Weber takes an act towards Reasoner as a means of retaliation against Swanson Espinoza? It requires an act of harassment as defined in 18-9111. Can it not be an act of harm? I mean, your brief spent a lot of time talking about whether something was a threat, but that's not the only way that you trigger this retaliation statute, right? Well, Sergeant Porter specifically said it was harassment, not an act of harm or injury. Well, is that, are we bound by what he said? The point is what a reasonable officer would believe, not what Sergeant Porter believed, right? I think in this case, we are bound by what Sergeant Porter believed. That, that, is that, is that our law? Our law is objective. It's an objective standard. It's what a reasonable officer would believe, right? And a reasonable officer would have trouble deciding that Mr. Weber committed harassment. And that is what Sergeant Porter determined had happened. Now— You're already one, one and a half minutes over your time, counsel. Thank you. May it please the Court, good morning, Your Honors. My name is James Kadolf, and I represent the defendants in this case, Golden Police Department Officer Sergeant Matt Porter and James Barron, in addition to the City of Golden. This Court should affirm the District Court's grant of summary judgment for two reasons. First, plaintiff has failed to identify, both before the District Court and before this Court here, any clearly established evidence of the defendant's involvement in this case. Second, plaintiff has failed to identify any clearly established law that would demonstrate that what Officers Porter or Barron did was clearly unconstitutional. Moreover, on our second point, we assert that there's no constitutional violation here, and thus, the officers are entitled to qualified immunity, and the District Court should be affirmed. Could I start you off with Officer Barron? We spent time with the appellant talking about Sergeant Porter. The District Court concluded that this wasn't a general warrant. It seems awfully broad and unparticularized. Why should we find that this warrant passes constitutional muster? Your Honor, two reasons. Of course, we would assert clearly established laws to that, but as to the constitutional violation problem you're talking about here? Leaving aside the clearly established, I'm asking you about the constitutional violation. As to the constitutional violation, the warrant does describe, with particularity, the actual cell phone that is to be searched, down to, I believe, the SIM card number that's present on it. Beyond that, it also references the specific forms of data and items that could be searched on the phone. But the warrant says, in furtherance of this investigation. What does that mean? It. That just feels quite broad in the context of this case and reading it together with the affidavit that supports the warrant. It seems to be referencing just the neighborhood. Anything that you can find on the phone that has to do with these ongoing disputes. Your Honor, I think the in furtherance of the investigation is the scope of that is limited by the fact that the warrant itself is limited to the one case number that's present. I believe the case number between the general neighborhood dispute has one number, and then this one is a second number. And so it would be limited not to the general significant neighborhood dispute, but the facts before the court. A second number related to what? In particular, this case, Your Honor. What is this case? There is a menacing case. There is a case in which Swanson Espinoza supposedly confronts Mr. Weber, which is a sort of witness intimidation. And supposedly that's really what they wanted. They wanted some video of Mr. Swanson Espinoza approaching Mr. Weber. That's a second case, right? And so what case are we talking about? Your Honor, my read of the search warrant itself is that it's seeking information related to this harassment or intimidation of a witness case. Harassment as in Weber's contact of Mr. Wiesner's employer? Yes, Your Honor. That's my read of it. Well, a lot of what the affidavit talks about relates to the video that supposedly was taken place by Mr. Weber of Mr. Swanson Espinoza approaching his car, and that was viewed as witness intimidation. So there are three things going on here. There is witness retaliation against a witness, which is Weber against either Swanson Espinoza or Mr. Wiesner. There is the menacing case. And then there's a case involving Mr. Swanson Espinoza approaching the car, right? Yes, Your Honor. All right. Well, tell us which one are we talking about when they say in furtherance of the investigation, and which one does that number relate to? Well, Your Honor, I believe that the number relates to this specific case. You're not helping me, man. What specific case are we talking about? Which of those three that I identified for you are we talking about? The harassment intimidation of a witness case against Mr. Weber. Okay. Well, then why is it that the affidavit spends all of its time talking about getting film of the contact between Mr. Swanson Espinoza and Mr. Weber, where essentially Weber is claiming that he was intimidated by Mr. Swanson Espinoza? I mean, if you look at page, the affidavit, page, let's see, what is it? Page 57, I'm sorry, 271 of the record. We're talking about what filming took place involving Mr. Swanson Espinoza approaching the car, right? Mr. Weber's cell phone, middle of, I guess, what would be the third paragraph. Sergeant Porter also sees Mr. Weber's cell phone, which might contain potential evidence from the intimidation of a witness. Okay. And there is discussion about the fact that we're talking about Mr. Swanson Espinoza approaching Mr. Weber, right? Yes, Your Honor, that is referenced in the affidavit. Okay, well, that affidavit was in support of the search warrant, right? It was, Your Honor. And was it the focus of the search warrant to get the phone? Yes, Your Honor. And the phone, the purpose of getting the phone was to get the video of the contact between Swanson Espinoza and Weber, right? Your Honor, under the facts you've given me, I think that's correct. Well, if that's correct, then that doesn't relate to the retaliation against a witness which is the charge of Weber trying to retaliate against either Swanson Espinoza or Mr. Reisner. It's entirely separate in matter. And, Your Honor, I hadn't seen the affidavit in support of the search warrant as referring to that. I'm happy to provide supplemental briefing on that issue. Well, I don't need supplemental briefing. What I need to understand from this affidavit is the affidavit talks about on page 270 the contact that took place between Swanson Espinoza and Mr. Weber. And apparently, okay, so it talks about this contact. This contact was supposedly filmed. And then on the next page, it says that Sergeant Porter hoped to get potential evidence of the intimidation of a witness. And now we're not talking about retaliation against a witness. We're not talking about Weber against Swanson Espinoza, are we? We're talking about evidence of Swanson Espinoza approaching the car, right? Yes, Your Honor. Okay. Well, as it relates to that, number one, that reinforces the notion there are multiple investigations going on here. And so it's not clear. Why do we know that in furtherance of this investigation, well, you started out telling me it related to this retaliation against a witness, which would have been an entirely separate matter. It would have been Weber against, you know, one of his neighbors, right? Which is different than his neighbor approaching the car. Yes, Your Honor. That's correct. Okay. Well, let's go beyond that. The affidavit makes a point of talking about how Weber takes a photo from, oh, he tries to take a photo. We're on page, in the affidavit, page 270. Third, I think it's the second paragraph down. He said that he tries to take a photo of Swanson Espinoza approaching the car. His phone drops. So his wife takes the video. Based upon that, why do we have probable cause to believe that taking his phone will give you video of that encounter? He specifically said, I mean, it specifically said in the affidavit that it wasn't his phone that took the video. So help me with that. I'm technologically challenged. There may be some way that this worked out. There's some talk about an SD card or something like that. So explain to me, how could it be that when they seize his phone, that there was probable cause to believe his phone would have video of this encounter when the affidavit specifically says his phone didn't take the video? Your Honor, looking at that, I think what you're picking up on is the fact that there's a lot going on in this case. You better believe it. And when you're going to violate, well, when you're going to infringe on somebody's Fourth Amendment rights, you better have a reason to do it, right? Yes, Your Honor. And that means it can't be confusion. That can't be your operating principle, right? Yes, Your Honor. As an initial matter, I would point out that this issue was not briefed, both before the brief and the answer brief or in the reply brief. The scope of the warrant was briefed? Yes, Your Honor. But this specific allegation about what the affidavit is, and the specific argument made here wasn't necessarily briefed by the parties. But if I can speak a little bit more about Your Honor's question here, and please stop me if I go off the rails, the affidavit in support of the search warrant does describe how the phone would have that information. And so I don't believe that the SD card issue here, which is not sought to be seized, really comes into an account of the probable cause question. I think that the issue that I have, even spotting you the technology, I understand the Chief's question is a very important one. But let's assume that there is support for this phone. What concerns me is that the affidavit says, any files related to neighborhood disputes and disturbances involving Mr. Weber. It feels as though the warrant is sought given the contentious issues in the neighborhood generally, and not about the investigation specifically. Even though I understand you're trying to tell me that I should be reading investigation together with the case number. I'm not sure that works if you read the entire warrant and affidavit. But that's the problem. It's the very end of the same page we were on before, Appellant's Appendix, Volume 2271. How should we be thinking about the fact that the request here is for anything about this neighborhood dispute? Your Honor, I would just militate against that by saying that the search of these items of technology can be somewhat difficult. And in particular, the programs that they're using here. And so it may be necessary to search elements of the phone that are tied to any neighborhood dispute to try to find evidence related to this neighborhood dispute. How about not precisely a fishing expedition, which is unconstitutional, right? Your Honor, it's not a fishing expedition because it does identify specifically what it's looking for. It's not this neighborhood dispute. It's got to be this crime, right? I mean, we're not... They had an ongoing running dispute for a decade. So they had to be looking for evidence of a specific crime, right? It... Your Honor, it does have to be tied to a specific crime in some way. The warrant does not have to specifically cite a specific crime within it itself. I don't believe that's the state of the law. Is the state of the law there has to be an investigate... There has to be probable cause... They have to be showing probable cause that there is evidence of a... That there are fruits of or there's evidence of a specific crime. Whether they mention the crime by chapter and verse is not the point. But I mean, they can't say, you know, neighborhood dispute that took place during a month. I know there's a crime in there, so I'm going to do a search warrant to get to the bottom of it. They can't do that, right? Your Honor, as it relates to this case, were there other evidence related to the neighborhood dispute? What neighborhood dispute are we talking about now? As I mentioned, there are at least three things floating around in this case. What neighborhood dispute are you correlating to this warrant? The harassment intimidation of a witness case where Mr. Weber would be the defendant. And then, Your Honor, with Kander, the search warrant does have a second case number appended to it as well. And I believe that would be the other intimidation of a witness case where Mr. Weber was, in fact, the victim. And so, and I apologize for not bringing that earlier to the Court's attention. But also, okay, which also raises the question of what they're looking for. And as far as briefing goes, although the argument was not made as extensively, perhaps, as I'm doing now, on page 23 of appellant's brief, they say there is no statement providing a basis to believe that the SD card was in Weber's cell phone. And the thing that was seized was Weber's cell phone, right? That's right, Your Honor. The issue of the SD card was not, however, briefed before the district court either. And that element didn't come up before the district court. Did you argue good faith? Yes, Your Honor. We argued arguable probable cause. That goes to the arrest. That doesn't go to the search. Yes, Your Honor. And we also argued clearly established law related to the search warrant. Okay. Thank you, counsel. Case is submitted. Thank you for your arguments.